IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 18, 2005

## FELIX TYRONE SMITH v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 99-A-432/98-D-2527      Steve Dozier, Judge**

_____

**No. M2004-02098-CCA-R3-CD - Filed August 18, 2005**

_____

Defendant, Felix Tyrone Smith, pled guilty to one count of aggravated assault and one count of possession of more than 0.5 grams of cocaine with intent to sell. Defendant was sentenced to an effective eight-year sentence on supervised probation. In 2002, Defendant was found to be in violation of the conditions of his probation but the trial court reinstated Defendant's probation. Approximately two years later, after the filing of another probation violation warrant, the trial court revoked Defendant's probation and ordered Defendant to serve the original eight-year sentence in confinement. On appeal, Defendant argues that the trial court erred by relying on evidence not included in the record when revoking Defendant's probation. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Ross E. Alderman, District Public Defender; Graham Prichard, Assistant Public Defender; and Emma Rae Tennent, Assistant Public Defender, Nashville, Tennessee, (on appeal); and C. Edward Fowlkes, Nashville, Tennessee, (at trial), for the appellant, Felix Tyrone Smith.

Paul G. Summers, Attorney General and Reporter; Elizabeth T. Ryan, Assistant Attorney General; Victor S. (Torry) Johnson III, District Attorney General; Pamela Sue Anderson, Assistant District Attorney General; Angelita Dalton, Assistant District Attorney General; L. Lasenez, Assistant District Attorney General; and Dumaka Shabazz, Assistant District Attorney General, for the appellee, the State of Tennessee.

# OPINION

## I. Background

At the guilty plea submission hearing, the State summarized the evidence underlying Defendant's aggravated assault conviction as follows:

> Elizabeth McClellan, the victim in this case, went to . . . a residence where the defendant was staying with Teresa Day. [The victim] knocked on the door, demanded to come in. It was one o'clock in the morning. She flipped on the lights. [Defendant] was in bed. He had a gun by his bed sitting in a chair. He grabbed the gun and he shot her three times, twice in the chest and once in the abdomen.

The evidence underlying Defendant's conviction for possession with intent to sell of more than .5 grams of cocaine was summarized as follows:

> Officer Gilliland (phonic) ran into Teresa Day, asked for an ID. [S]he led the officer to a hotel room to provide that ID for the officer. As the officer walked in, he observed [Defendant] laying on the bed concealing his hands. The officer demanded that [Defendant] reveal whatever it was that he had in his hands. The defendant threw a container containing a white substance out of the door. That ended up being 4.5 grams of Crack Cocaine.

Defendant received a sentence of six years for his aggravated assault conviction and eight years for his possession with intent to sell cocaine conviction. Both sentences were suspended and ordered to be served concurrently. Defendant would serve his effective eight-year sentence on supervised probation, with at least the first six months served on intensive probation. In addition, as conditions of his probation, Defendant would submit to random drug screens, pay a two-thousand dollar fine, and complete the dual fifty-two week Peace program, which deals with domestic violence and substance abuse issues.

Subsequently, a warrant was issued for Defendant's arrest for violating his probation. The warrant alleged that Defendant: (1) was arrested for Public Intoxication and Theft in Sumner County, (2) failed to report to his probation officer, (3) owed probation fees, (4) failed to complete the Peace program, and (5) had not made payment on his fines. Following a hearing, the trial court reinstated Defendant on probation for six and eight years, respectively. Defendant was ordered to complete the Peace program and to refrain from consuming alcohol.

Later, another warrant was issued for Defendant's arrest for again violating his probation. The warrant alleged that Defendant: (1) failed to provide verification of lawful employment, (2) failed to provide verification of residence or whereabouts, (3) failed to report to his probation officer, (4) failed to pay probation fees, (5) failed to comply with the rules of intensive probation, and (6) failed to complete the fifty-two week Peace Program. Following this second probation revocation

hearing, the trial court revoked Defendant's probation and ordered the original sentences into effect: six years (at thirty percent) for aggravated assault and eight years (at thirty percent) for possession with intent to sell cocaine.

The portion of the transcript of evidence from Defendant's second probation revocation hearing includes the testimony of: Defendant, a reverend from the Prison Ministry program, and Defendant's brother. At the hearing , Defendant testified that after being placed on probation, he reported to his probation officer for a short time. However, he had a death in the family, and he became depressed. As a result, Defendant stopped reporting to his probation officer and relapsed into drinking alcohol and using cocaine. He had a car accident in Shelbyville which resulted in his being charged with a DUI and simple possession of cocaine. While being incarcerated as a result of the DUI and simple possession charges, Defendant began a Bible study program, completed a Bible study course, got baptized, and attended twenty consecutive weekly AA meetings. Defendant testified that he was a union plumber, and if allowed back on probation, he would work full time as a plumber. He further testified that, if released back on probation, he would live with his mother in order to take care of her because his father had recently passed away. On cross-examination, Defendant admitted that he had not completed the fifty-two week Peace program. He initially stated that he had only completed forty-seven weeks. The court questioned Defendant further and he admitted that forty-seven weeks was only an estimate. He stated that he had completed "forty-something" weeks of the program. He also testified that he received a sentence of six-months for his DUI conviction, served at one-hundred percent, along with twenty-three weeks of probation and a three-thousand dollar fine.

Reverend Sandra Avent, the State Field Director for Prison Fellowship Ministries testified on Defendant's behalf. She has known Defendant "since he was a little boy" because Defendant's brother was a member of the church where she serves as pastor. She testified that Defendant had been an "active part" of the Prison Ministry "for some time." She further testified that because Defendant is "quite talented in all of the building trades" there were plans for him to help restore their current church building and to help build a new church building.

Defendant's brother testified that if Defendant was allowed back on probation, he was willing to provide him with "tough love" in order to help his brother recover from his drug and alcohol addictions. The witness testified that he, himself, was a recovering alcoholic and that he had not had any alcohol for one year or used any drugs for six months.

The trial court took the matter under advisement so that he could review his notes from the previous probation revocation hearing when Defendant was placed back on probation. The trial court then issued a written order, in which it held:

> The Court sustained a previous probation violation on February 28, 2002, and the defendant was reinstated to Community Corrections [sic]. The Court heard testimony from the defendant that he believed he completed approximately forty-five (45) out if the fifty two peace classes. According to the Domestic Violence

Intervention Center, the defendant missed nine (9) meetings and was forced to leave the program. The defendant actually attended twenty-eight out of the required fifty-two meetings. Based on the nature of the offenses and the defendant's prior attempts at release, the Court finds that the violation should be sustained and the defendant's sentence placed into affect.

Defendant filed a timely notice of appeal.

## II. Analysis

A trial court may revoke probation and order the imposition of the original sentence upon a finding by a preponderance of the evidence that the person has violated a condition of probation. Tenn. Code Ann. §§ 40-35-310, 311. The decision to revoke probation rests within the sound discretion of the trial court. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). Revocation of probation and a community corrections sentence is subject to an abuse of discretion standard of review, rather than a *de novo* standard. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). Discretion is abused only if the record contains no substantial evidence to support the conclusion of the trial court that a violation of probation or community corrections sentence has occurred. *Id.*; *State v. Gregory*, 946 S.W.2d 829, 832 (Tenn. Crim. App. 1997). Proof of a violation need not be established beyond a reasonable doubt, and the evidence need only show that the trial judge exercised a conscientious and intelligent judgment, rather than acting arbitrarily. *Gregory*, 946 S.W.2d at 832; *State v. Leach*, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995).

The only issue raised in this appeal is whether the trial court erred in revoking Defendant's probation based on evidence not included in the trial court's record. Specifically, Defendant argues that the following statement included in the trial court's written order revoking his probation indicates that the court conducted an independent investigation because the evidence was not introduced in court:"According to the Domestic Violence Intervention Center, the defendant missed nine (9) meetings and was forced to leave the program. The defendant actually attended twenty-eight out of the required fifty-two meetings." Defendant relies on *State v. Hart*, 911 S.W.2d 371 (Tenn. Crim. App. 1995), for the proposition that "it is a well-established principle of law that a judge is not permitted to make an investigation of a case, even an inadvertent one, off the record, and then base a holding on the information obtained." *Id.* at 376.

Initially, we note that it is apparent the record on appeal is incomplete. The transcript of the probation revocation hearing begins with "DEFENSE PROOF", and then includes the arguments of counsel, and the trial court's ruling that he would take the matter under advisement. None of the State's proof is included in the transcript. For this reason, we cannot tell whether the trial court's reliance on the Domestic Violence Intervention center's records of Defendant's Peace Program attendance was, in fact, a result of the trial court's independent investigation, or whether the information was included as a part of the State's proof at the probation revocation hearing. It is the duty of the accused to provide a record which conveys a fair, accurate and complete account of what transpired with regard to the issues which form the basis of the appeal. Tenn. R. App. P. 24(b); *see*

*State v. Taylor*, 992 S.W.2d 941, 944 (Tenn. 1999). An incomplete record requires us to presume that the trial court's findings were correct. *State v. Oody*, 823 S.W.2d 554, 559 (Tenn. Ct. Crim. App. 1991). Notwithstanding the incomplete record, what is available on appeal shows that the trial court was justified in revoking Defendant's probation.

In *State v. Hart*, a panel of this Court reversed a trial court's denial of a petition for writ of coram nobis. In that case, the minor victim of aggravated rape attempted to recant her testimony after the defendant, her step-father, had been convicted. *Hart*, 911 S.W.2d at 372. Believing the victim testified truthfully at the original trial and was only attempting to recant her testimony after the fact as a result of pressure from her mother, the trial court denied the defendant's request for a new trial. *Id.* at 373. However, the trial court's written order denying relief stated that the court relied on two pieces of evidence which the trial court obtained by private inquiry: statements made by the victim while at a mental health facility for children, and unfavorable results of a polygraph examination conducted on the defendant. *Id.* at 373-74. This Court stated, "While it is obvious that the trial court did not believe [the witnesses], this Court cannot determine what, if any, influence [the independent evidence] had upon the trial court when determining the credibility of the witnesses. . . . Therefore, this Court is compelled to reverse the judgment of the trial court and remand this cause for a new hearing[.]" *Id.* at 378.

In the case *sub judice*, we need not be concerned about what, if any, influence the trial court's determination of the actual number of Peace Program classes Defendant attended had upon Defendant's credibility. By Defendant's own admission at the probation revocation hearing, he did not complete all fifty two weeks of the program, as required by his probation. The trial court did not rely on evidence outside of the record in order to resolve a factual issue because there was no real conflict between Defendant's testimony and the trial court's findings. *See Vaughn v. Shelby Williams of Tennessee, Inc.*, 813 S.W.2d 132, 134 (Tenn. 1991) (holding that when a trial court relies upon evidence outside of the record in resolving a factual issue, the court becomes a witness). Unlike *Hart*, even if the trial court had credited Defendant's account of how many courses he had attended, the court could still have concluded that Defendant had violated the terms of his probation because he failed to attend all of the required classes. Furthermore, Defendant also admitted during his testimony that he had violated the terms of his probation by using alcohol, using cocaine, failing to meet with his probation officer, and being convicted of DUI. The trial court did not abuse its discretion in revoking Defendant's probation. Defendant is not entitled to relief in this appeal.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE